UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

ASHLEY FRANCIS                                                    **CV**

                                  Plaintiff,
          -against-                                               **COMPLAINT**

CABLE BUILDING OWNERS, LLC AND NIKE,                              **JURY TRIAL REQUESTED**
INC.

                                  Defendants.
-----------------------------------------------------------------x

## **COMPLAINT**

Plaintiff Ashley Francis (hereafter referred to as "Plaintiff"), by counsel, The

Parker Law Group P.C., as and for the Complaint in this action against Defendants Cable

Building Owners, LLC and Nike, Inc. (together referred to as "Defendants"), hereby

alleges as follows:

## **NATURE OF THE CLAIMS**

1.      This lawsuit opposes pervasive, ongoing, and inexcusable disability

discrimination by the Defendants.  In this action, Plaintiff seeks declaratory, injunctive,

and equitable relief, as well as monetary damages, nominal damages, and attorney's fees,

costs, and expenses to redress Defendants' unlawful disability discrimination against

Plaintiff, in violation of Title III of the Americans with Disabilities Act ("ADA") 42

U.S.C. § 12181 *et seq.* and its implementing regulations; the New York State Human

Rights Law ("NYSHRL"), Article 15 of the New York State Executive Law ("Executive

Law"); the New York State Civil Rights Law, § 40 *et seq.*; and the New York City

Human Rights Law ("NYCHRL"), Title 8 of the Administrative Code of the City of New

York ("Administrative Code").  As explained more fully below, Defendants own, lease,

1

lease to, operate, and control a place of public accommodation that violates the above-mentioned laws. Defendants are vicariously liable for the acts and omissions of their employees and agents for the conduct alleged herein.

2.      These Defendants made a financial decision to ignore the explicit legal requirements for making their place of public accommodation accessible to persons with disabilities – all in the hopes that they would never be caught. In so doing, Defendants made a calculated, but unlawful, decision that customers with disabilities are not worthy. The day has come for Defendants to accept responsibility. This action seeks to right that wrong via recompensing Plaintiff and making Defendants' place of public accommodation fully accessible so that Plaintiff can finally enjoy the full and equal opportunity that Defendants provide to non-disabled customers.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 12188, and 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under the ADA. The Court has supplemental jurisdiction over Plaintiff's related claims arising under the New York State and City laws pursuant to 28 U.S.C. § 1367(a).

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants' acts of discrimination alleged herein occurred in this district and Defendants' place of public accommodation that is the subject of this action is in this district.

**PARTIES**

5.      Defendant Cable Building Owners, LLC owns the property located at 611 Broadway in New York County, New York (hereinafter referred to as "611 Broadway").

6.       At all relevant times, defendant Nike, Inc. leases property located at 611 Broadway from the defendant Cable Building Owners, LLC.

7.      At all relevant times, defendant Nike, Inc. has and continues to operate a retail establishment at 611 Broadway doing business as Nike (hereinafter referred to as the "Nike" premises).

8.      Each defendant is licensed to and does business in New York State.

9.      Upon information and belief, Cable Building Owners, LLC and Nike, Inc. have a written lease agreement.

10.      At all times relevant to this action, Plaintiff Ashley Francis has been and remains currently a resident of the New York, New York.

11.      At all times relevant to this action, Plaintiff Ashley Francis has been and remains a wheelchair user.  Plaintiff has medical conditions that inhibit walking and restrict body motion range and movement.

12.      The Nike store at 611 Broadway opened in April 2016.

13.      Plaintiff resides less than a mile away from this Nike store.

14.      The Nike store at 611 Broadway is the closest Nike store to Plaintiff's residence.

15.      Immediately after entering the Nike store, a person encounters a staircase leading up to the level where all the merchandise is displayed and sold.

3

16.    There is no wheelchair accessible ramp for a person to utilize to travel up to the level where the merchandise is displayed and sold.

17.    Instead, there is a mechanical platform lift located on the right side facing the interior staircase.

18.    As explained below, this mechanical platform lift has not been operational since 2018, inclusive of the times that Plaintiff has attempted to use the lift in 2026.

19.    Defendant Cable Building Owners, LLC installed this mechanical platform lift in 2016.

20.    The New York City Department of Buildings regulates the use and installation of mechanical platform lifts in the same manner as it regulates elevators.

21.    The mechanical platform lift inside the Nike store is registered with the New York City Department of Buildings as Device # 1W7001.

22.    The New York City Department of Buildings requires that all elevator devices and mechanical platform lifts undergo a safety inspection designed to ensure safe operation.  This safety inspection is called a Category 1 elevator test.

23.    A Category 1 Elevator Test Report is the official document produced after an annual safety inspection of an elevator performed by a Qualified Elevator Inspector to verify that the lift system operates safely under normal conditions

24.    A Category 1 Elevator Test Report is the official proof that an elevator and/or platform lift has passed its annual safety inspection, documenting the test results, inspector credentials, and any required corrective actions.  It is a critical part of elevator maintenance compliance and public safety.

25.     The New York City Department of Buildings has issued at least three violations against 611 Broadway for the failure to file a Category 1 Elevator Test Report for the mechanical platform lift (Device # 1W7001) inside the Nike store.

26.     The three violations are identified by the New York City Department of Buildings as:  VIO-FTF-VT-CAT1-201812-0000417;  VIO-FTF-VT-PER-202212-0010297; and VIO-FTF-VT-PER-202412-0000729.

27.     VIO-FTF-VT-CAT1-201812-0000417 is for the safety reporting cycle ending at December 31, 2018.

28.     VIO-FTF-VT-PER-202212-0010297 is for the safety reporting cycle ending at December 31, 2022.

29.     VIO-FTF-VT-PER-202412-0000729 is for the safety reporting cycle ending at December 31, 2024.

30.     All three of these violations are active and have not been resolved.

31.     Defendants are not lawfully permitted to utilize the mechanical platform lift until these open violations have been cured.

32.     Until this mechanical platform lift is inspected and certified as safe for use, Defendants would be needlessly endangering the physical safety of persons if they operated this mechanical platform lift.

33.     Plaintiff first visited the Nike store in May 2026.

34.     Plaintiff visited the Nike store in May 2026 to return merchandise and also to purchase merchandise.

35.     Plaintiff informed the security guard that she needed to return merchandise that she had bought at a Nike store in Atlanta.

36.     Plaintiff travel through the entrance doors and immediately encountered the staircase.

37.     The store security guard informed Plaintiff that the platform lift was not working.

38.     Plaintiff waited like a prisoner at the bottom of the staircase while able bodied persons freely travelled up and down the staircase.

39.     Eventually, a store employee came down the stairs to meet Plaintiff.  The store employee conducted the return transaction at the bottom of the staircase in front of Plaintiff.

40.     The store employee also informed Plaintiff that the mechanical lift was not working.

41.     On June 9, 2026, with the Knicks fever spreading through the city, Plaintiff traveled to the Nike store to purchase Knicks related merchandise.

42.     Hoping that the mechanical platform lift was now operational, Plaintiff went through the entrance doors to the Nike store.

43.     Plaintiff then traveled to the mechanical lift to gain access to the Nike store.

44.     But, to Plaintiff's great dismay, she observed that the Nike employees had placed a stanchion blocking access to the mechanical lift.

45.     Below is a picture taken by Plaintiff on June 9, 2026 of the mechanical platform lift with a black stanchion in front of and blocking access to the lift:



46.     Plaintiff was again informed that the mechanical lift was not working.

47.     Plaintiff spoke with a Nike store manager and asked about the mechanical lift.  Specifically, plaintiff asked when the mechanical lift was going to be operational.

48.     The Nike store manager informed Plaintiff that she had no idea when the mechanical lift would be fixed.

49.    The Nike store manager also informed Plaintiff that the mechanical lift was a "big issue" with the building and that the building management needed to get it fixed.

50.    Upon information and belief, the mechanical lift has never been operational since the Nike store opened in April 2026.

51.    The mechanical lift remains inoperable to this day.

52.    Defendants have let the violations against the mechanical lift remain open and unresolved for years.

53.    Defendants have no intention of curing the serious violations issued relating to the safety of the mechanical lift.

54.    Unless enjoined by the Court, Defendants will take no action to comply with their obligations under the ADA to provide a wheelchair accessible means of vertical access.

55.    Plaintiff has patronized many of the Nike stores across the country.

56.    Plaintiff has worn and will continue to wear Nike products.

57.    Plaintiff enjoys patronizing the Nike stores because they are visually stunning to experience.

58.    Plaintiff intends on continuing to shop at Nike and desires to have the Nike store closest to her home be wheelchair accessible.

### ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

59.    Each of the Defendants is a public accommodation as they own, lease, lease to, control or operate a place of public accommodation, the Nike premises located at 611 Broadway, within the meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. §

36.104), the NYSHRL (Executive Law § 292(9)) and the NYCHRL (Administrative Code § 8-102(9)).

60.    The Nike premises is a place of public accommodation within the meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. § 36.104), the NYSHRL (Executive Law § 292(9)) and the NYCHRL (Administrative Code § 8-102(9)) as it is a facility operated by a private entity and its operations affect commerce.

61.    Numerous architectural barriers exist at the Nike premises that prevent and/or restrict access to Plaintiff, a person with a disability, which include, but are not limited to, architectural barriers at the paths of travel.

62.    In 2026, Defendants spent over $100,000 to perform renovations and alterations to create the Nike premises, and to areas of 611 Broadway related to the Nike premises.

63.    The services, features, elements and spaces of the Nike premises are not readily accessible to, or usable by Plaintiff as required by the Americans with Disabilities Act Accessibility Guidelines, 28 C.F.R. Part 36, Appendix A, and adopted by the United States Department of Justice in 1991 as the Standards for Accessible Design (hereinafter referred to as the "1991 Standards" or the "1991 ADA") or the revised final regulations implementing Title III of the ADA adopted by the United States Department of Justice in 2010 as the 2010 Standards for Accessible Design (hereinafter referred to as the "2010 Standards" or the "2010 ADA").

64.    Because of Defendants' failure to comply with the above-mentioned laws, including but not limited to the 1991 Standards or the 2010 Standards and the Administrative Code, Plaintiff was and has been unable to enjoy safe, equal, and

9

complete access to all of the areas of the Nike premises that are open and available to the public.

65.    Defendants' place of public accommodation has not been designed, constructed, or altered in compliance with the 1991 Standards, the 2010 Standards, and/or the Building Code of the City of New York ("BCCNY").

66.    Barriers to access that Plaintiff experienced, encountered and/or which deter Plaintiff from patronizing the Nike premises as well as architectural barriers that exist include, but are not limited to, the following:

I.    Defendants fail to provide accessible vertical access to the floors above the ground floor.  42 U.S.C. § 12183(b); and 28 C.F.R. §§ 36.404(a) and 36.401(d)(2).

II.    Defendants fail to provide access to all levels open to the public, and no operable accessible means of vertical access is provided to all levels.  See 1991 Standards §§ 4.1.3, 4.1.6; and the 2010 Standards §§ 206.2.2, 206.2.3, 206.2.3.1, 206.2.4, 206.2.6.

III.    Defendants fail to provide that the platform lift provided for wheelchair users facilitates unassisted entry, operation, and exit from the lift.  See 1991 Standards §§ 4.11.3; 4.11.2; and 4.11.1; and 2010 Standards § 410.1; and BCCNY ANSI/A117.1 -2003 410.1.

IV.    Defendants fail to provide the minimum maneuvering clearance of level and clear space adjacent to the handle side of the door to the entrance for the platform lift. See 1991 Standards §§ 4.11, 4.1.3(7), 4.13.6; and 2010 Standards §§ 206.5.2, 404.2.4.1, 305.3, 404.3, and 410.6.

V.    Defendants fail to provide that the minimum clear floor space inside the platform lift.  2010 Standards §§ 305 and 410.3.

VI.    Defendants fail to provide side doors and gates with a clear width of 42 inches minimum at accessible platform lifts.  See 1991 Standards § 4.11.2; 2010 Standards § 410.6; and BCCNY ANSI/A117.1 -2003 410.2.1.

VII.    Defendants fail to provide a 42 inches minimum ramp to side doors and gates at accessible platform lifts.  See 1991 Standards § 4.11.2; 2010 Standards § 410.6; and BCCNY ANSI/A117.1 -2003 410.2.2.

10

VIII. Defendants fail to provide an accessible elevator. See 1991 Standards § 4.10; and 2010 Standards § 407.

IX. Defendants do not provide an accessible public entrance. See 28 C.F.R. § 36.304(c); and 1991 Standards §§ 4.1.1(1); 4.1.3(8), 4.32, and 4.14; and 2010 Standards §§ 206.1, 206.2, 206.3, 206.2.4, 206.4; and BCCNY §§ 1101.2, 1104.1, 1103.1.

X. The interior space of defendants' public accommodation is not accessible and usable to the disabled plaintiff. See Administrative Code §§ 27-292.10 and 27-292.5.

XI. Defendants fail to provide that no protruding objects exist inside the minimum required clear floor space width of the interior's accessible route. See 1991 Standards §§ 4.2, 4.4.1, 4.3.3, 4.1.3; and 2010 Standards §§ 204, 307.1, 307.5, 403.5.1.

XII. Defendants fail to provide an accessible interior route of 36 inches in width in all locations available to non-disabled customers. See 1991 Standards § 4.3.3; and 2010 Standards § 403.5.1; and BCCNY ANSI/A117.1 -2003 403.5.

XIII. Defendants fail to provide the minimum required maneuvering clearance width at the end of every obstruction or aisle from which to make a turn around the obstruction or aisle. See 1991 Standards § 4.3.3; and 2010 Standards § 403.5.2.

XIV. Defendants fail to provide the minimum required maneuvering clearance inside the public accommodation from which to make a 180-degree turn. See 1991 Standards § 4.2.3; and 2010 Standards §§ 304.3.1, 304.3.2.

XV. Defendants fail to provide a floor surface that is stable, firm and slip resistant. See 1991 Standards § 4.5.1; and 2010 Standards § 302.1.

XVI. Defendants fail to provide a level floor surface as the surface is interrupted by changes in level of greater than ½ inch thereby creating a dangerous condition to plaintiff. See 1991 Standards §§ 4.3.8, 4.5.2; and 2010 Standards §§ 303.2, 303.3, 303.4.

XVII. Defendants fail to provide a level floor surface as the floor surface is interrupted by changes in level of greater than ¼ inch and less than ¾ inch above the finished floor without beveling. See 1991 Standards § 4.5.2, 4.1.6(3), 4.13.8, 4.1.3(7)(a); and 2010 Standards §§ 303.3, 404.2.5, 206.5.1, 206.4.1.

XVIII. Defendants fail to provide that at least one of each type of sales and/or service counter is accessible and dispersed throughout its premises inclusive of the Nike by You counter and the Always Knicks counter near the entrance stairs. See 1991

11

Standards § 7.2; 2010 Standards §§ 227.3, 227.1, 904.4; and BCCNY §§ 1109.12, 1109.12.3.

XIX. Defendants fail to provide that at least one of each type of function counter is accessible and dispersed throughout its premises. See 1991 Standards §§ 7.2, 7.3(1); 2010 Standards §§ 227.3, 904; and BCCNY §§ 1109.12, 1109.12.3.

XX. Defendants fail to provide a portion of the sales and/or service counter inclusive of the Nike by You counter and the Always Knicks counter near the entrance stairs that are no greater than 36 inches above the finish floor and no less than 36 inches in length thereby making it impossible or exceedingly difficult for the plaintiff to conduct a transaction in a manner similar to non-disabled customers. See 1991 Standards § 7.2; 2010 Standards §§ 227.1, 227.3, 904.4; and BCCNY §§ 1109.12, 1109.12.3.

XXI. Defendants fail to provide the minimum required maneuvering clearances of level and clear space for an accessible path of travel to and from the sales and/or service counters inclusive of the Nike by You counter. See 1991 Standards §§ 4.3, 4.2, 4.2.4, 4.32.2, 5.3; and 2010 Standards §§ 305, 305.3, 305.5, 305.6, 802.1.2, 802.1.3, 902.2, 903.1, 903.2, 902.4.1.

XXII. Defendants fail to provide sufficient clear space of 30 inches by 48 inches in front of the sales and/or service counter from which to conduct the transaction inclusive of the Nike by You counter. See 1991 Standards § 4.2.4.1, 7.1, 7.2; and 2010 Standards §§ 305, 904.4.

XXIII. Defendants fail to provide an accessible route to approach the sales and/or service counters thereby making it impossible or exceedingly difficult for the plaintiff to conduct a transaction. See 1991 Standards §§ 7.1, 4.3; and 2010 Standards §§ 904.2, 403.

XXIV. Defendants fail to provide an accessible route to exit the sales and/or service counters thereby making it impossible or exceedingly difficult for the plaintiff to conduct a transaction. See 1991 Standards §§ 7.1, 4.3; and 2010 Standards §§ 904.2, 403.

XXV. Defendants fail to provide that the sales and/or service counters have accessible reach ranges from which to conduct a transaction. See 1991 Standards §§ 5.6 and 4.2; 2010 Standards §§ 904.5.1, 308, 227.4.

XXVI. Defendants fail to provide the minimum clear width for the waiting lines for inclusive of the Nike by You counter. See 1991 Standards §§ 7.3(2), 4.2.1; 2010 Standards §§ 227.5, 403; and BCCNY § 11091.5.

XXVII.  Defendants fail to provide at least one accessible fitting room in each cluster.  See 1991 Standards §§ 4.1.3(21), 4.35; 2010 Standards §§ 222.1, 803, 803.1; and BCCNY § 1109.12.1.

XXVIII.  Defendants fail to provide that the International Symbol of Accessibility is properly displayed at a designated accessible fitting room.  See 1991 Standards §§ 4.30, 4.30.7; and 2010 Standards §§ 216.2, 703.4, 703.4.1, 703.4.2, 703.7.2; BCCNY § 11010.1(8).

XXIX.  Defendants fail to provide an accessible route of at least 36 inches to its fitting room.  See 1991 Standards § 4.35.1, 4.33; and 2010 Standards § 403.5.1.

XXX.  Defendants fail to provide that the mirror inside the fitting room meets the minimum required dimensions for accessibility to a wheelchair user.  See 1991 Standards § 4.35.5; and 2010 Standards § 603.3.

XXXI.  Defendants fail to provide an accessible bench inside the fitting room.  See 1991 Standards § 4.35.4; 2010 Standards §§ 803.4, 903.

XXXII.  Defendants fail to provide that the dimensions for the bench seat is within the minimum requirements.  See 1991 Standards § 4.35.4; and 2010 Standards §§ 803.4, 903.3, 903.5.

XXXIII.  Defendants fail to provide that the bench seat is fixed to the adjacent wall or, if not affixed, that the bench seat has the minimum required back support.  See 1991 Standards § 4.35.4; and 2010 Standards §§ 803.4, 903.4.

XXXIV.  The curtain to the fitting room requires tight grasping, tight pinching and twisting of the wrist to operate.  See 1991 Standards §§ 4.1.3(7), 4.35.3 and 4.13.9; and 2010 Standards §§ 404.2.7, 309.4.

67.  Upon information and belief, a full inspection of the Nike premises will reveal the existence of other barriers to access.

68.  As required by the ADA (remedial civil rights legislation) to properly remedy Defendants' discriminatory violations and avoid piecemeal litigation, Plaintiff requires a full inspection of the Nike premises to catalogue and cure all the areas of non-compliance with the ADA.  Notice is therefore given that Plaintiff intends to amend the

13

Complaint to include any violations discovered during an inspection that are not contained in this Complaint.

69.     Defendants have denied Plaintiff the opportunity to participate in or benefit from services or accommodations because of disability.

70.     Defendants have not complied with their statutory obligation to ensure that their policies, practices, and procedures for persons with disabilities are compliant with the laws.  Nor have Defendants made or provided accommodations or modifications for persons with disabilities.

71.     Plaintiff has a realistic, credible, and continuing threat of discrimination from the Defendants' non-compliance with the laws prohibiting disability discrimination. The barriers to access within the Nike premises continue to exist and deter Plaintiff.

72.     Plaintiff intends to patronize the Nike premises several times a year after it becomes fully accessible and compliant with the 1991 Standards or the 2010 Standards, and the Administrative Code.

<u>**FIRST CAUSE OF ACTION**</u>
**(VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT**)

73.     Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

74.     Plaintiff is substantially limited in the life activity of both walking and body motion range and thus has a disability within the meaning of the ADA.  As a direct and proximate result of Plaintiff's disability, Plaintiff uses a wheelchair for mobility and has restricted use of arms and hands.

75.     The "General Rule" of the ADA is that: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the

14

goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

76.     Defendants violate the ADA at 42 U.S.C. § 12182(a) by denying Plaintiff the full and equal enjoyment of the services, facilities, privileges, advantages, or accommodations of its public accommodation.

77.     The ADA at 42 U.S.C. § 12182(b)(1)(A)(i) states that: "It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity."

78.     Defendants violate the ADA at 42 U.S.C. § 12182(b)(1)(A)(i) by denying Plaintiff, because of his disability, the opportunity to participate in and benefit from the services, facilities, privileges, advantages, or accommodations offered by the Defendants.

79.     The ADA at 42 U.S.C. § 12182(b)(1)(B) states that "Goods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual."

80.     Defendants violate the ADA at 42 U.S.C. § 12182(b)(1)(B) by failing to afford the disabled Plaintiff with its services, facilities, privileges, advantages, and accommodations in a setting that is integrated with non-disabled persons.

81.     Defendants fail to take measures to integrate people with disabilities and instead outright exclude people with disabilities like Plaintiff.

82.     The ADA at 42 U.S.C. § 12182(b)(2)(A)(ii) defines discrimination as "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations."

83.     Defendants violate the ADA at 42 U.S.C. § 12182(b)(2)(A)(ii) by failing to make reasonable modifications in their policies, practices, or procedures that would result in the disabled Plaintiff being able to enjoy its services, facilities, privileges, advantages, or accommodations.

84.     The ADA imposes joint and several liability on both the property owner and lessee of a public accommodation.  28 C.F.R. § 36.201(b).

85.     Defendants violate the ADA at 42 U.S.C. § 12182(b)(2)(A)(iii) by failing to take all the necessary measures to "ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals."

86.     Defendants violate the ADA at 42 U.S.C. § 12182(b)(2)(A)(iii) by failing to take steps necessary to ensure that no individual with a disability is excluded, denied services, and/or segregated.

87.     Under the ADA, both the property owner and lessee are liable to the Plaintiff, and neither can they escape liability by transferring their obligations to the other by contract (i.e., lease agreement).  28 C.F.R. § 36.201(b).

88.     Defendants have and continue to subject Plaintiff to disparate treatment by denying Plaintiff full and equal opportunity to use their place of public accommodation all because Plaintiff is a person with a disability.  Defendants' policies and practices have and continue to subject Plaintiff to disparate treatment and disparate impact.

89.     By failing to comply with the law in effect for decades, Defendants have articulated to people with disabilities such as the Plaintiff that they are not welcome, objectionable, and not desired as patrons of their public accommodation.

90.     Defendants have discriminated against the Plaintiff by designing and/or constructing a building, facility and place of public accommodation that is not readily accessible to and usable by the disabled Plaintiff and not fully compliant with the 1991 Standards or the 2010 Standards.  See 28 C.F.R. § 36.401(A)(1) and 42 U.S.C. § 12183(a)(1).

91.     The Nike premises are not fully accessible and fail to provide an integrated and equal setting for people with disabilities, in violation of 42 U.S.C. § 12182(b)(1)(A) and 28 C.F.R. § 36.203.

92.     Defendants failed to make alterations accessible to the maximum extent feasible in violation of 28 C.F.R. §§ 36.402 and 36.406 and 42 U.S.C. § 12183(a)(2).

93.     The paths of travel to the altered primary function areas were not made accessible in violation of 28 C.F.R. § 36.403.

94.     Defendants failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of 28 C.F.R. § 36.304.  It would be readily achievable to make Defendants' place of public accommodation fully accessible.

95.    By failing to remove the barriers to access where it is readily achievable to do so, Defendants have discriminated against Plaintiff on the basis of disability in violation of § 302(a) and 302(b)(2)(A)(iv) of the ADA, 42 U.S.C. § 12182(a), (b)(2)(A)(iv), and 28 C.F.R. § 36.304.

96.    In the alternative, Defendants have violated the ADA by failing to provide Plaintiff with reasonable alternatives to barrier removal as required by 28 C.F.R. § 36.305.

97.    Defendants' failure to remove the barriers to access constitutes a pattern and practice of disability discrimination in violation of 42 U.S.C. § 12181 *et seq.*, and 28 C.F.R § 36.101 *et seq.*

98.    Defendants have and continue to discriminate against Plaintiff in violation of the ADA by failing to maintain and/or create a wheelchair accessible public accommodation.

**SECOND CAUSE OF ACTION**
**(VIOLATIONS OF THE NEW YORK STATE HUMAN RIGHTS LAW)**

99.    Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

100.    Plaintiff has various medical conditions that separately and together prevent the exercise of normal bodily functions in Plaintiff; in particular, the life activities of both walking and body motion range.  Plaintiff therefore has a disability within the meaning of the Executive Law § 292(21).

101.    In 2019, the New York State legislature enacted legislation that provides effective immediately that the New York State Human Rights Law shall be "construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether

18

federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed".  See Executive Law § 300 [effective date: August 12, 2019].

102.    By amending the Executive Law § 300 to mirror the text of the New York City Local Civil Rights Restoration Act of 2005 (Local Law 85 of 2005), the New York State legislature confirmed the legislative intent to abolish parallel construction between the New York State Human Rights Law and related Federal anti-discrimination laws.

103.    Defendants have and continue to subject Plaintiff to disparate treatment by denying Plaintiff equal opportunity to use their place of public accommodation all because Plaintiff is a person with a disability.

104.    Defendants discriminated against Plaintiff in violation of NYSHRL (Executive Law § 296(2)), by maintaining and/or creating an inaccessible place of public accommodation.  Each of the Defendants has aided and abetted others in committing disability discrimination.

105.    Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of NYSHRL (Executive Law § 296(2)(c)(iii)).

106.    In the alternative, Defendants have failed to provide Plaintiff with reasonable alternatives to barrier removal as required in violation of NYSHRL (Executive Law § 296(2)(c)(iv)).

107.    It would be readily achievable to make Defendants' place of public accommodation fully accessible.

19

108.    It would not impose an undue hardship or undue burden on Defendants to make their place of public accommodation fully accessible.

109.    As a direct and proximate result of Defendants' unlawful discrimination in violation of NYSHRL, Plaintiff has suffered, and continues to suffer emotional distress, including, but not limited to, humiliation, embarrassment, stress, and anxiety.

110.    Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (VIOLATIONS OF THE NEW YORK CITY HUMAN RIGHTS LAW)

111.    Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

112.    Plaintiff has various medical conditions that separately and together impair Plaintiff's bodily systems - in particular, the life activity of both walking and body motion range - and thus Plaintiff has a disability within the meaning of the NYCHRL (Administrative Code § 8-102(16)).

113.    Defendants have and continue to subject Plaintiff to disparate treatment and disparate impact by directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their place of public accommodation all because of disability in violation of the NYCHRL (Administrative Code § 8-107(4)).  Each of the Defendants has aided and abetted others in committing disability discrimination.

114.    Defendants have and continue to commit disability discrimination in violation of the Administrative Code (inclusive of § 8-107(4)) because of the violations of the ADA as alleged herein.

115.    Defendants have discriminated and continue to discriminate against Plaintiff in violation of the NYCHRL (Administrative Code § 8-107(4)) by designing, creating, and/or maintaining an inaccessible commercial facility/space.

116.    Defendants have subjected, and continue to subject, Plaintiff to disparate treatment by directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their commercial facility/space all because of disability in violation of the NYCHRL (Administrative Code § 8-107(4)).

117.    Defendants' policies and procedures inclusive of the policies of refusing to expend funds to design, create and/or maintain an accessible commercial facility/space is a discriminatory practice in violation of NYCHRL (Administrative Code § 8-107(4)).

118.    In violation of the NYCHRL (Administrative Code § 8-107(6)), Defendants have and continue to, aid and abet, incite, compel, or coerce each other in each of the other Defendants' attempts to, and in their acts of directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their commercial facility/space and the place of public accommodation therein, all because of disability, as well as other acts in violation of the NYCHRL.

119.    Administrative Code §§ 19-152 and 7-210 impose a non-delegable duty on the property owner to repave, reconstruct, repair, and maintain its abutting public sidewalk.  As a result, Cable Building Owners, LLC continuously controlled, managed, and operated the public sidewalk abutting 611 Broadway, which includes the portion of the sidewalk constituting the entrance to Defendants' place of public accommodation.

120.    Cable Building Owners, LLC's failure to construct and maintain an accessible entrance from the public sidewalk to Defendants' place of public

accommodation constitutes disability discrimination in a violation of the Administrative Code.

121.    Defendants' conduct also violates the NYCHRL, Administrative Code § 8-107 (17), which states that "an unlawful discriminatory practice . . . is established . . . [when plaintiff] demonstrates that a policy or practice of a covered entity or a group of policies or practices of a covered entity results in a disparate impact to the detriment of any group protected by the provisions of this chapter."

122.    Because Defendants' public accommodation is not readily accessible and usable by people with disabilities, Defendants have demonstrated a policy or practice that has a disproportionately negative impact on people with disabilities (including Plaintiff).

123.    Defendants' conduct constitutes an ongoing and continuous violation of the NYCHRL.  Unless Defendants are enjoined from further violations, Plaintiff will continue to suffer injuries for which there is no adequate remedy at law.  Plaintiff will suffer irreparable harm by being denied the accommodations, advantages, facilities, or privileges of the Defendants' public accommodation.

124.    As a direct and proximate result of Defendants' unlawful discrimination in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer emotional distress, including, but not limited to, humiliation, stress, and embarrassment.

125.    Upon information and belief, Defendants' long-standing refusal to make their place of public accommodation fully accessible was deliberate, calculated, egregious, and undertaken with reckless disregard to Plaintiff's rights under the NYCHRL.

126.    By failing to comply with the law in effect for decades, Defendants have articulated to people with disabilities such as the Plaintiff that they are not welcome, objectionable, and not desired as patrons of their public accommodation.

127.    Defendants engaged in discrimination with willful or wanton negligence, and/or recklessness, and/or a conscious disregard of the rights of others and/or conduct so reckless as to amount to such disregard for which Plaintiff is entitled to an award of punitive damages pursuant to NYCHRL (Administrative Code § 8-502).

128.    By refusing to make their place of public accommodation accessible, Defendants have unlawfully profited from their discriminatory conduct by collecting revenue from a non-compliant space and pocketing the money that they should have lawfully expended to pay for a fully compliant and accessible space.  Defendants' unlawful profits plus interest must be disgorged.

129.    Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
## (VIOLATIONS OF THE NEW YORK STATE CIVIL RIGHTS LAW)

130.    Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

131.    Defendants discriminated against Plaintiff pursuant to New York State Executive Law.

132.    Consequently, Defendants denied Plaintiff the full and equal accommodations, advantages, facilities, and privileges of a place of public accommodation because of disability, in violation of N.Y. Civ. Rights Law § 40.

133.    Plaintiff is entitled to recover the monetary penalty prescribed by Civil Rights Law §§ 40-c and 40-d for each violation.  Notice of this action has been served upon the Attorney General as required by Civil Rights Law § 40-d.

## INJUNCTIVE RELIEF

134.    Plaintiff will continue to experience unlawful discrimination because of Defendants' failure to comply with the above-mentioned laws.  Therefore, injunctive relief is necessary to order Defendants to alter and modify their place of public accommodation and their operations, policies, practices, and procedures.

135.    Injunctive relief is also necessary to make Defendants' facilities readily accessible to and usable by Plaintiff in accordance with the above-mentioned laws.

136.    Injunctive relief is further necessary to order Defendants to provide auxiliary aids or services, modification of their policies, and/or provision of alternative methods, in accordance with the ADA, NYSHRL, and the NYCHRL.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment against the Defendants, jointly and severally, in favor of Plaintiff that contains the following relief:

A.   Enter declaratory judgment declaring that Defendants have violated the ADA and its implementing regulations, NYSHRL and NYCHRL and declaring the rights of Plaintiff as to Defendants' place of public accommodation, and Defendants' policies, practices, and procedures;

24

B.   Issue a permanent injunction ordering **Defendants to close and cease all business** until Defendants remove all violations of the ADA, the 1991 Standards or the 2010 Standards, NYSHRL and NYCHRL, including, but not limited to, the violations set forth above;

C.   Issue a permanent injunction ordering Defendants to modify their policies, practices, procedures and/or conduct in compliance with the ADA, NYSHRL and NYCHRL so that Plaintiff is not excluded from and can have the full and equal enjoyment of the services, facilities, privileges, advantages, and/or accommodations offered by the Defendants;

D.   Retain jurisdiction over the Defendants until the Court is satisfied that the Defendants' unlawful practices, acts and omissions no longer exist and will not recur;

E.   Award Plaintiff compensatory damages and nominal damages because of Defendants' violations of the NYSHRL and the NYCHRL;

F.   Award Plaintiff punitive damages to punish and deter the Defendants for their violations of the NYCHRL;

G.   Award Plaintiff the monetary penalties for each violation of the law pursuant to New York State Civil Rights Law §§ 40-c and 40-d;

H.   Find that Plaintiff is a prevailing party and award reasonable attorney's fees, costs, and expenses pursuant to the NYCHRL, and the ADA; and

I.   For such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Dated: July 5, 2026
      New York, New York

                              Respectfully submitted,

25

**THE PARKER LAW GROUP P.C.**

By:                            

          Glen H. Parker, Esq.
          Attorneys for Plaintiff
          28 Valley Road, Suite 1
          Montclair, New Jersey 07042
          Telephone: (347) 292-9042
          Email: ghp@parkerlawusa.com